AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

APR ~ 3 2017

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Disclosure of Location-Based Services for T-Mobile Cellular Telephone Number (703) 226-9912

)
)
)
)
)

Case No. 1:17sw173

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Facilities belonging to service provider T-Mobile associated with cellular telephone number (703) 226-9912. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(a) and Fed. Rule of Crim. P. 41.

located in the _____Unknown_____ District of _____, there is now concealed *(identify the person or describe the property to be seized):*
Disclosure of location-based electronic communications data for T-Mobile cellular telephone number (703) 226-9912.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to distribute cocaine a Schedule II controlled substance. |
| 18 U.S.C. § 922(g) | Prohibited person in possession of a firearm. |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Michael A. Fernald, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____04/03/2017____

/s/
John F. Anderson
United States Magistrate Judge
*Judge's signature*

City and state: __Alexandria, Virginia__

The Hon. John F. Anderson, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



IN THE MATTER OF THE APPLICATION OF
THE UNITED STATES OF AMERICA FOR A
SEARCH WARRANT AND ORDERS
PURSUANT TO 18 U.S.C. §§ 2703(c)(1)(A) AND
3122(a)(1) FOR: (1) THE DISCLOSURE OF
LOCATION BASED SERVICES; (2)
DISCLOSURE OF STORED
TELECOMMUNICATIONS RECORDS FOR
TELEPHONE NUMBER **(703) 226-9912**; AND (3)
INSTALLATION OF A PEN REGISTER AND
TRAP AND TRACE DEVICE

**UNDER SEAL**

1:17-sw-173

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael Fernald, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF") since 2014.  I am trained as a Digital Media Collection Specialist with ATF,

and I have experience and training in obtaining data from electronic devices, including cellular

and multimedia devices.  I also have experience investigating narcotics and firearms trafficking

offenses as well as searching electronic devices for evidence of narcotics and firearms trafficking

offenses.

2.      This affidavit is submitted in support of an application for the disclosure of

location-based electronic communications data and an order for the installation of a pen register

and trap and trace device for a cellular telephone number (703) 226-9912 (as defined in the

Application and hereinafter referred to as the "SUBJECT TELEPHONE NUMBER"), pursuant

to Federal Rule of Criminal Procedure 41(d)(1) and Title 18, United States Code, Sections 2703(c) and 3122(a).  The SUBJECT TELEPHONE NUMBER is serviced by T-Mobile and is used by TARVELL VANDIVER.  As set forth in greater detail below, I believe there is probable cause to support the determination that VANDIVER is a member of a conspiracy to distribute cocaine and other controlled substances and that members of the conspiracy have distributed cocaine within the Eastern District of Virginia and elsewhere.  Further, I submit there is probable cause to support the determination that VANDIVER uses the SUBJECT TELEPHONE NUMBER to conduct narcotics and firearms trafficking.

3.      This affidavit does not contain every fact known to me regarding this investigation, but rather contains information necessary to demonstrate probable cause in support of the above-referenced search warrant.  In addition, I set forth the following facts showing that there are sufficient grounds to believe that the disclosure of location-based services and the installation of a pen register and trap and trace device on the SUBJECT TELEPHONE NUMBER, will be relevant and material to an ongoing criminal investigation.

4.      The facts and information contained in this affidavit are based on my personal knowledge and information obtained from federal and state law enforcement officers.  All observations referenced in this affidavit that were not personally made by me were relayed to me by the person(s) who made such observations or in reports that detailed the events described by that person(s).

**PROBABLE CAUSE**

A.      <u>Background on the Investigation</u>

5.      In February of 2017, a cooperating source ("CI-1") reported to the Prince William County Police Department Street Crimes Unit that VANDIVER was a narcotics distributor.  CI-1

2

is a member of the Imperial Gangster Blood gang. CI-1 will be referred to in the masculine gender, regardless of CI-1's true gender. CI-1 has been convicted of two felonies, including robbery and a probation violation. He was arrested in December of 2016, in Prince George's County, Maryland, for possessing a stolen firearm as a convicted felon and possession of controlled substances. CI-1 is cooperating with law enforcement in return for consideration for his pending charges.

6.      Based on this information and because VANDIVER is a known member of the Imperial Gangster Blood gang, ATF opened an investigation into VANDIVER.

B.      Controlled Purchase of Cocaine from Tarvell VanDiver on March 2, 2017

7.      On March 2, 2017, CI-1 contacted VANDIVER via FaceTime. VANDIVER was using account borntowin88@icloud.com, which CI-1 identified as an account used by VANDIVER.

8.      At law enforcement direction, CI-1 ordered one (1) ounce of cocaine from VANDIVER. VANDIVER agreed to sell the cocaine for $1,300. During this conversation, CI-1 and VANDIVER agreed to meet at a pre-arranged location in the Eastern District of Virginia to conduct the transaction. Prior to the controlled purchase, law enforcement searched CI-1 and his vehicle and found them to be free of any illegal contraband. Law enforcement then provided CI-1 with ATF agent cashier funds to conduct the controlled purchase. The controlled purchase was also audio recorded.

9.      Later that evening, VANDIVER contacted CI-1 via iMessage and informed CI-1 that he (VANDIVER) was watching a movie at the AMC Theater located at the Potomac Mills shopping center in Woodbridge, Virginia, which is within the Eastern District of Virginia. VANDIVER asked CI-1 to meet him (VANDIVER) in the AMC Theater parking lot. CI-1

3

agreed to the meeting and traveled to the meeting location. Law enforcement officers also conducted surveillance of the meeting.

10. Shortly thereafter, CI-1 received another iMessage from VANDIVER, who stated he would be out of the movie in approximately ten minutes. Law enforcement observed VANDIVER exit the theater and enter CI-1's vehicle. Law enforcement then observed VANDIVER exit CI-1's vehicle and enter another vehicle. VANDIVER instructed CI-1 to follow him (VANDIVER).

11. Law enforcement observed VANDIVER and a co-conspirator drive away. CI-1 followed. VANDIVER and CI-1 stopped at the overflow parking lot of Bayside Apartments, which are located on East Longview Drive, Woodbridge, Virginia. Law enforcement observed the vehicles park and then observed VANDIVER, a co-conspirator, and CI-1 enter an apartment located on East Longview Drive.

12. CI-1 reported that several of VANDIVER's criminal associates were located in the apartment. CI-1 also observed a black firearm on a table in the living room. According to CI-1, VANDIVER retrieved three (3) ounces of cocaine from a suitcase in the living room. CI-1 then observed VANDIVER weigh one (1) ounce of cocaine from this larger quantity and then package it. CI-1 then provided VANDIVER with $1,300 and VANDIVER provided CI-1 with the cocaine. CI-1 reported that VANDIVER then returned the two (2) ounces of cocaine to the suitcase.

13. After the controlled purchase, CI-1 drove to a meeting location, where law enforcement debriefed CI-1. CI-1 provided the suspected cocaine, which field-tested positive for the presence of cocaine.

4

C.     Controlled Purchase of Cocaine on March 8, 2017 at a Gang Meeting

14.     On March 8, 2017, CI-1 reported to law enforcement that there would be an Imperial Gangster Blood gang meeting on March 11, 2017. CI-1 reported VANDIVER would be at the meeting and that he would be able to purchase cocaine from him. On March 11, 2017, the meeting took place at the Hilton Garden Inn, which is located on 2500 Neabsco Common Place, Woodbridge, Virginia.

15.     Prior to the gang meeting, CI-1 rented the hotel room for the meeting and granted ATF access to place audio/video recorders in the room. Based on my review of the recording, I believe CI-1's description of the events and conversations at the gang meeting was accurate.

16.     In addition, prior to the gang meeting, CI-1 met with law enforcement officers. ATF special agents searched CI-1 and his vehicle for contraband with negative results. Agents then provided CI-1 with ATF agent cashier funds to purchase cocaine and/or a firearm from VANDIVER and/or other co-conspirators. An audio recorder was placed on CI-1's person.

17.     Law enforcement then followed CI-1 to the hotel. During the trip, CI-1 had a FaceTime conversation with VANDIVER, who reported that he (VANDIVER) would meet CI-1 at the hotel. Shortly thereafter, law enforcement observed VANDIVER arrive at the hotel.

18.     CI-1, VANDIVER, and other gang members met within a hotel room. During the meeting, VANDIVER called and ordered pizza. VANDIVER provided the number (703) 226-9912 as his phone number.

19.     Further, during the meeting, CI-1 asked VANDIVER if he had any firearms to sell. VANDIVER reported he knew where to obtain a firearm. Then, in front of CI-1, VANDIVER used FaceTime to contact a co-conspirator ("Co-Conspirator 1"). Co-Conspirator 1 stated that he had two firearms and would bring one to the hotel. ATF positively identified Co-

5

Conspirator 1 as a convicted felon. Co-Conspirator 1 is currently wanted for felony firearm charges in the Commonwealth of Virginia. Upon arriving at the hotel, Co-Conspirator 1 sold CI-1 a firearm.

20.     At ATF direction, during the meeting, CI-1 ordered one (1) ounce of cocaine from VANDIVER. VANDIVER agreed to sell the cocaine for $1,300. Inside the hotel room, CI-1 observed VANDIVER in possession of cocaine.

21.     Later that evening, CI-1 and VANDIVER left the hotel in CI-1's vehicle. Law enforcement followed CI-1 from the hotel to a store on Worth Avenue, where VANDIVER picked up a quantity of "molly" from an unidentified source. Law enforcement then followed CI-1, who parked in the same overflow parking lot of Bayside Apartments. Law enforcement then observed CI-1 and VANDIVER enter an apartment.

22.     According to CI-1, several of VANDIVER's known criminal associates were in the apartment (including Co-Conspirator 1). CI-1 reported that VANDIVER retrieved a scale from the kitchen and then removed the bag of cocaine from his person. CI-1 observed VANDIVER sell one (1) gram of cocaine to an individual, who CI-1 then observed selling a smaller quantity to two additional customers. CI-1 then observed these customers manufacturing cocaine base and smoking it while inside this apartment. CI-1 also observed VANDIVER receive alcohol from another customer in return for a quantity of cocaine. VANDIVER weighed one (1) ounce of cocaine from the larger quantity, packaged it, and provided it to CI-1. CI-1 provided VANDIVER with $1,300.

23.     Law enforcement then observed VANDIVER and CI-1 depart the apartment and drive back to the hotel in CI-1's vehicle. CI-1 later provided agents with a bag containing a white powdery substance that field-tested positive for the presence of cocaine.

6

24.     During interactions with VANDIVER, CI-1 has observed VANDIVER use his cellular phone each time he used iMessage or FaceTime to communicate.  As stated above, VANDIVER provide (703) 226-9912 as his phone number.  A law enforcement database check revealed T-Mobile to the provider for this phone number.

D.     Controlled Purchase of Cocaine from Tarvell Vandiver on March 23, 2017

25.     On March 23, 2017, CI-1 contacted VANDIVER via FaceTime.  VANDIVER was using account borntowin88@icloud.com, which CI-1 identified as an account used by VANDIVER.

26.     At law enforcement direction, CI-1 ordered two (2) ounces of cocaine from VANDIVER.  VANDIVER agreed to sell the cocaine for $2,600.  During this conversation, CI-1 and VANDIVER agreed to meet at a location in the Eastern District of Virginia to conduct the transaction.  Prior to the controlled purchase, law enforcement searched CI-1 and his vehicle and found it to be free of any illegal contraband.  Law enforcement then provided CI-1 with ATF agent cashier funds to conduct the controlled purchase.  The controlled purchase was also audio recorded.

27.     When CI-1 arrived at the location, VANDIVER instructed him to enter his (VANDIVER's) vehicle.  Law enforcement observed VANDIVER and CI-1 drive away.  While driving, VANDIVER placed a FaceTime call to his suspected source of supply.  During the call, VANDIVER asked when there would be more cocaine and the other individual responded that he would probably have cocaine later that night or in the morning.  While in the car, VANDIVER discussed recent ounce-level drug deals he made to two co-conspirators.

28.     Law enforcement followed VANDIVER's vehicle to the area of Bellona Road, Woodbridge, Virginia.  Law enforcement observed VANDIVER and CI-1 exit the vehicle and

7

enter an apartment.  According to CI-1, once inside, VANDIVER retrieved a bag of cocaine

from underneath his clothing.  VANDIVER informed CI-1 that he had a little over two (2)

ounces of cocaine and CI-1 agreed to purchase the cocaine and provided VANDIVER with

$2,600.  VANDIVER weighed out two (2) ounces, packaged it, and provided it to CI-1.

VANDIVER took the remainder of the cocaine and secured it underneath his clothing.

29.     VANDIVER and CI-1 left the apartment and got back into VANDIVER's

vehicle.  VANDIVER placed a FaceTime call to a subject later identified as a co-conspirator and

informed him that he had an eighth of an ounce of cocaine left.  The co-conspirator agreed to

purchase it.  Law enforcement followed VANDIVER's vehicle to Ashdale Plaza, Woodbridge,

Virginia, where the co-conspirator met up with VANDIVER.  VANDIVER sold approximately

3.5 grams of cocaine to the co-conspirator.

30.     VANDIVER also informed CI-1 that he manufactures crack cocaine and offered

to do so for CI-1.

31.     Law enforcement followed VANDIVER's vehicle to the meeting location, where

VANDIVER dropped CI-1 back at his vehicle.  CI-1 drove to a meeting location where law

enforcement debriefed CI-1.  CI-1 provided law enforcement with the suspected cocaine, which

field-tested positive for the presence of cocaine.

E.     Use of Location-Based Services to Further the Investigation

32.     I believe that a court order authorizing the installation of a pen register trap and

trace device, the disclosure of stored records (including historical cell site information), and the

disclosure of location-based services will assist agents in determining the locations that

VANDIVER frequents and therefore assist agents in identifying locations where VANDIVER

meets to conduct his drug trafficking activity.  I submit it may also assist investigators in

8

identifying VANDIVER's co-conspirators as well as where VANDIVER or his source of supply may store their drugs, drug-related paraphernalia, and proceeds earned from their sale of drugs.

33.     Cell-sites only disclose the location of an Antenna Tower. Like plugging a conventional phone into a "wall-jack," the wireless telecommunications providers quickly and accurately detect which one of their "wall-jack" cell-sites is accessed by a mobile phone; and, armed with knowledge of that cell-site's physical tower location, agents can inferentially approximate the SUBJECT TELEPHONE NUMBER's location, at best to within several square miles, at the beginning and end of each call. This approximated location can be used to corroborate the observations of surveillance agents and to anticipate future movements and locations by establishing the target's habit or pattern. For example, if a target's first and last wireless calls of the day occur in the same cell site, then the geographic footprint of the area covered by that cell-site should correspond to the general location where the target is residing, working or sleeping. If there are several known addresses—as identified through subscriber records derived from the pen/trap or otherwise—in that same cell-site's coverage area, then there is a good possibility that the target is residing with or visiting one of those individuals.

34.     While the information acquired by cell-site analysis (which is created and stored in the ordinary course of business each and every time the mobile phone makes or receives a call) can be coarse and non-specific, information obtained from the telecommunications providers using their "Enhanced 911" tools (such as GPS fixes, triangulation, cell-site "pings," received signal strength indicator (RSSI), and timing offset analysis) can be much more precise. More precise information allows investigators to get closer to the actual handset. Some of these E-911 tools are not records that exist in the ordinary course of business and often are not created unless the user of the phone dials "911." Thus, unless a provider has reason to believe a mobile

phone's user is in distress (typically by virtue of a 911 call), telecommunications providers will require a court order to create, record, and disclose these electronic records to law enforcement. I submit that there is probable cause to support a court order to require the creation of these records and to compel the disclosure of these records. These records, however, are rarely so precise as to establish the phone's presence in a particular house or apartment and cannot be relied upon as a sole basis for attempting warrant service at any particular location.

35.    Whether the ATF receives real-time cell-sites or requests the provider disclose E-911 location information, no government "device" is involved. Rather, cell-site records are passed contemporaneously with pen register and trap and trace data from the accessing cell site to the local Mobile Telephone Switching, which forwards the information to the Provider's central collection facility (*i.e.* their law enforcement relations/court order bureau offices). From there, the provider authorizes the data stream for release to the ATF through its CALEA-compliant network.

36.    Similarly, when the ATF requests E-911 tools in an attempt to locate the physical handset, no government "device" is used. Rather, the provider will query the phone, which must be on, to ascertain its location through a two-way data dialogue. That information is captured and stored by the provider and passed on to the Investigative Agency orally or in writing (e.g. email or fax).

37.    Once I receive an order for the type of information requested herein, it is served upon the SUBJECT TELEPHONE NUMBER's Provider. Once received, it is catalogued and assigned to an electronic surveillance representative, who, based on caseload, will "provision" the SUBJECT TELEPHONE NUMBER for delivery in the appropriate "switches," thereby instructing those switches to forward the information to the Provider's central collection point.

"Provisioning" can occur at any time and, except for exigent cases, is dictated solely by the Provider. Thus, the ATF cannot control whether the Order will be electronically implemented during day or night.

38.     Revelation of the attempt to locate and investigate VANDIVER through use of the SUBJECT TELEPHONE NUMBER would greatly compromise our ongoing investigation. If alerted to the existence of the ongoing investigation, VANDIVER will likely change patterns, change phones, resort to other communications media, destroy evidence, and flee.

### CONCLUSION

39.     Based on the facts and circumstances stated above, I submit that there is probable cause to believe that the above-described drug violations have occurred, are presently occurring, and will continue to occur; and that VANDIVER has used, is using, and will continue to use the SUBJECT TELEPHONE NUMBER in furtherance of his illicit drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and in furtherance of firearms offenses, in violation of Title 18, United States Code, Section 922(g) and other firearm-related violations. I further believe that the installation of a pen register trap and trace device, the disclosure of stored records (including historical cell site information), and the disclosure of location-based services will permit law enforcement to monitor VANDIVER's involvement in illegal activities. Additionally, this order would provide investigating agents the ability to identify other co-

11

conspirators, sources of supply, and effectively track the movements of the holder of the

SUBJECT TELEPHONE NUMBER.

Respectfully submitted,

Michael A. Fernald
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Subscribed and sworn to before me on April 3, 2017

/s/

The Hon. John F. Anderson
United States Magistrate Judge

12